Good morning, your honors. May it please the court, Patrick Bryant for Phillip Thompson this morning. The issue in this case is fugitive tolling in the supervised release context. We acknowledge that this court cannot overrule the Buchanan decision, although we have preserved our argument that that case is wrongly decided. If the court persists in Buchanan that the doctrine of fugitive tolling exists in supervised release, the question then becomes, what does it take for a person on supervised release to become a fugitive? The government has said that it's basically any violation. Our position is that a more workable standard requires three things. First, the existence of actual charges pending. Second, the person's knowledge that those charges are pending. And third, intentional acts to evade those charges taken by the defendant in response. Has any court used that standard to define a fugitive under this doctrine? I'm not aware of one in the supervised release context. We've borrowed that. I meant in that context. I'm not aware of one. We've borrowed that from the 3290 context, the other fugitive tolling statute that applies in ordinary criminal cases that says a statute of limitations does not run while the defendant is a fugitive. And so there, we're asking for a consistency between the two. And the reason for that is that Buchanan borrowed from 3290 in applying a principle that a person should not benefit from this. It says nothing about the defendant intending to avoid adjudication of an outstanding petition. It just says defendant doesn't get credit for the portion of the supervised release sentence where he wasn't under supervision. I mean, I just don't see how we can reconcile this with Buchanan, I guess I'm saying. Well, the first answer is that we shouldn't overread Buchanan. We shouldn't stretch it. I'm just trying to read its reasoning. And the reasoning of Buchanan seems to be that the reason we apply this fugitive tolling doctrine is because the defendant doesn't get credit for that portion of the supervised release sentence where he wasn't actually under supervision. Fair enough. But then the question is, what is the date that triggers that point? When does the person come not under supervision? And the government takes the position that it's basically as soon as the person commits a violation. So somebody not reporting to the probation office or somebody missing a drug test or a drug treatment session, really anything. And these things, there's a lot of ways to violate supervised release. No, I understand that. It's very technical. And so if the mere act of committing a violation makes a person a fugitive. The district court found here, though, right, that in addition to not reporting, that the defendant affirmatively concealed his presence to avoid having to report and to avoid getting caught for not reporting. Isn't that going to be enough? I understand that we should be very careful about how we describe the standard. But on the, given the district court's factual finding here, what's the concern? Well, on the facts here, just being in the country and using an alias in order to survive and work and live in the country is not enough to show that he was intending to evade supervised release. I thought the district court found that he was. We disagree with that. We think that that's clearly erroneous. Yes. And that's, again, consistent with cases in the 3290 context. We've cited the Duff case that really surveys a lot of those cases. And there's the Deleon Ramirez case that we've also cited. And so because the use of an alias is not specifically directed at avoiding a supervised release violation, especially here, where the petition wasn't filed until after he was deported. So he had no knowledge that a petition was pending or that he was facing charges. But he had knowledge of the conditions of his supervised release based on his criminal conviction in the first instance. That's true. And I mean, that's the very first thing in the very first thing in the judgment order is the defendant shall report to the probation office. The very first two things in the standard conditions of supervised release are, first, not leave the judicial district without permission of the probation officer. He knew he was violating that without a petition. And number two, shall report to the probation officer within the first five days of each month. He had to know he was violating that. He doesn't need a petition to have notice of those things. Well, we're not arguing that it's not a violation. And so the knowing commission of a violation does not necessarily make one a fugitive any more than any other commission of wrongdoing makes someone a fugitive, even when there's an affirmative duty. So paying taxes, for example, people have an obligation to file a tax return, but every person who fails to file a tax return is not a fugitive. A mandatory reporter of child abuse who fails to report an incident is not a fugitive, even for that period that they failed to report, even though they knowingly violate a duty that they have. And so the government standard is that just by virtue of... So being a fugitive is not, it's, you're saying being a fugitive, he's not a fugitive until the government says, files the petition and says he's a fugitive. And he has not... There are other options of fleeing and evading the government that does not make him a fugitive and concealing his identity. Our position is no, for purposes of a supervisor-at-least petition, there are other ways to punish that behavior, including if he's ever brought back, that behavior can be considered at a revocation proceeding at the sentencing under the 3553A factors. And there are certain circumstances where he could be charged with a new offense, perhaps. And for Mr. Thompson specifically, the underlying drug offense that he was arrested for and charged with, it was taken into account at that sentencing. He was charged with illegal reentry in Florida. It was taken into account at that sentencing. So he's not necessarily getting away with anything because it can be taken into account. He is because if he would have reported within the 72 hours of returning to the United States, he would have learned of a petition then. But again, the fact that he violated supervisor-at-least by not reporting doesn't make him a fugitive. And what the government then is asking for is that simply violating, simply failing to report means that he should be constructively charged with some kind of knowledge. And so the government used the phrase in its brief, constructively absconded, which is kind of like saying accidentally on purpose. It's a constructive argument for something that in every other context requires specific intent, knowledge of those charges and attempt to evade them. And here he had no knowledge of those charges. The petition wasn't filed until after he was deported. So how could he be evading it if he had no knowledge of it? So that's our position. We think that the government's position is completely unworkable. It would create a situation where we don't know when someone is a fugitive until after the fact. We don't know whether supervisor-at-least is told or not. We don't know probably the most important point, when it expires, until well after the fact. And so it creates these anomalies, and especially when someone might be facing other original charges and they would not be deemed a fugitive under Section 3290, we would have a situation where somebody could be a fugitive for one purpose and not a fugitive for another. And there's no reason to open up that can of worms. And the thing we have to remember is that fugitive tolling in the supervisor-at-least context is not in the statute. It's a judicially created equitable doctrine. So there's no reason to read it any farther than the terms of Buchanan at the most, because then if the court goes too far, in a lot of cases it would render 3583I superfluous. Because in most situations, the probation officer will be able to file a petition to put that marker down to allow for a revocation proceeding to take place after expiration if the person is ever apprehended. And so if we allow fugitive tolling to run indefinitely just from the point of a violation without any knowledge on the person's behalf, then the period never expires. We don't have to use 3583I. And so an actual statute becomes obsolete because of a judicially created equitable tolling doctrine. And just like every other equitable tolling doctrine, every other judicially created doctrine that's not in the statutes, this court should be wary of reading that very well. But if we follow your reasoning, the defendant simply needs to stay away and evade law enforcement long enough for supervisor-at-least to run, and then he can come back without repercussion. No, not without repercussion, Your Honor. Respectfully, because in that situation, if the person didn't report, the probation officer would ordinarily file a petition that would allow for a delayed revocation under 3583I when the person is ever caught. So they're not getting away with anything, but we're perceiving under the statutory scheme that Congress intended. But wouldn't they get away with it in a case like this where the – I mean, the point is they're not supposed to be in the country, so nobody knows they're supposed to be reporting. So how would a petition be filed in a case like this? Do you know what I'm saying? Hypothetically, if you're – if the facts were hypothetical, if the facts were exactly as they are here, and you're not supposed to be in the country at all, how would anyone know that the person is there and not reporting so that a petition could be filed? So you're saying if a person completely evades any knowledge – well, I think that's no different than any other situation where somebody commits a supervisor-at-least violation that the probation officer doesn't find out about. There are simply going to be those kind of situations, just as in an ordinary criminal context, there are going to be situations where somebody commits a crime and the statute of limitations expires, and they've gotten away with it. And that's just the way the statute works. Can I ask you a question? Are you just on a sort of separate issue? Are you – you're not – I know you're challenging sort of the district court saying the tolling – the clock stopped for tolling purposes.  I mean, the district court also said the clock did not start again before this revocation proceeding, that the tolling continued until the actual revocation proceeding. And you're not challenging that part of it, are you? Well, it would really be the arrest, because that would be when the government has knowledge that he's here and the process has started. Right, but that's not what the district court said. The district court said that the tolling continues up until the time that he was holding the hearing, which was January 2018. Right. But I didn't – did you challenge that in your brief? We didn't, and I don't think that that time would make any difference here, which is why we didn't. There may be cases where that kind of distinction between arrest and the hearing would matter. But here, I could check the record, but I don't believe it matters. Here, because it was 2017, you would have been ordinarily passed at five years anyway. Right. The period otherwise would have expired in 2015. But the question I have is that, are you conceding – your case is unique, because it's interesting, you chose to go out to Buchanan, but the question is, are you conceding that your client was really in violation – there's proof in this record he was in violation, because your client, am I correct, had no obligation to report at all as long as he stayed out of the United States, correct? If he stayed out of the United States. No, not if. As long as he stayed out of the United States. Words are very important, right? Yes. Right? So we know he was in the United States on 2011. Right. Correct? Because they found him in California, and he was deported, right? Yes. So the government's theory is that from 2011 until the time of arrest, it's told, right? Right? Am I correct? Yes, that's the government's theory. Right. No, okay. So what is the evidence in the record that he was in the United States more than 72 hours after that time? Because that's the only time he has to report. If he comes back to the United States within 72 hours, he has to report. But where's the evidence in this record that he was in the United States more than 72 hours between 2011 and 2017? Well, we didn't challenge that, Your Honor, and perhaps that was actually – I'm asking what's the record. Well, the record comes from the underlying criminal case where he was charged with a drug – not underlying to this, but the criminal case where he was charged with a drug conspiracy in 2014. Yeah, but 2014 said he had some bank transaction in California. That was a discrete incident. But beyond that, where's the evidence that he was in the United States more than 72 hours in 2014? Well, it's not in this record, but in the other case – Well, this record's the only thing you're concerned – No, I understand. You're representing your client in this case. I'm asking you where is the record because that's the only way that makes him subject to supervision is being in the country and within a period of 72 hours he has to report that he's supervised. Your case is unique because otherwise he has no duty to do anything in terms of reporting. Right? You're right. And so I'll say that there's nothing in this record speaking to that, but we didn't challenge it. Well, yeah. Doesn't a defendant have to report to their probation officer even when they're in custody? No. I mean, he would have to report when he comes back in the country, but while he's in custody he's supervised at least tolls if he's in custody for more than 30 days. That's under 3624E. Right. They deported him in 2011. Right. Exactly. So he left the country, and the only other evidence in this record that I see is that he was here for at least that day in Miami, no, in California again, for a bank transaction in 2014. But if there's no evidence that he was there beyond 72 hours, he has no duty to be under supervision there. I mean, he just left the country. He was there that day, did his transaction, and went back to another country. Do you agree with that? I mean, I'm not trying to make you a case, but I just found it odd that the record right here, when you look at it, I mean, that's what lawyers do. You look at the record, it's got to be the record. Maybe I missed something, but tell me where it shows that he was in the country more than 72 hours between 2011 and 2017 and the time of his arrest in June in Miami. Well, just in candor, Your Honor, I think the way that the supervisor release condition was worded was that he had to report within 72 hours after he came back. Did I say something different? Well, not that he had to be here for a period of 72 hours, but that the way that I guess I read the court. But if he's no longer in the country, he's not here. Well, but if he comes back for one day. And he came back in March 2011, right? That's in the record. Right, but I think Judge Gregory is asking about in 2014 or any time after he was deported in 2011. So I think that at least the way that I read the order is that it's not a durational requirement. No, but here's the point. The point, though, is this. The point is clearly they did not want him in the country. Do whatever you want to do. We don't want to see you. Just leave. So if he came in 2014 for one day, you mean to tell me and went back, he needs to come all the way back to the United States to do what they don't want him to do to be on the supervisor. Right? Does that make any sense? I don't think it would. I'm not sure that that's how I read the condition. Well, good. You're the lawyer. Well, I'm not trying to give up the case, but I'm going to say we didn't challenge it below. So I'm sort of stuck with that. Wow, you're the first lawyer I've known in terms of telling the court. No, I'm not. Go ahead. Well, we've reserved some time. Okay. If there are no questions now. All right. All right. Thank you. Sobrano. Good morning. Good morning, Your Honors. May it please the court, Aiden Sobrano for the government. Philip Thompson was convicted of drug trafficking crimes and sentenced to 180 months imprisonment and five years supervised release. The terms of that supervised release required him to stay outside of the country but to report to the U.S. Probation Office if he returned within 72 hours. Okay. So going to Chief Judge Gregory's question, where is there evidence in the record that he returned and was here for 72 hours? So in the transcript of the revocation hearing, there's testimony from the DEA agents doing the investigation that said they had evidence that Mr. Thompson returned to the United States as early as 2013. In the district court's opinion, it found that he was here at least by December of 2014 based on testimony of individuals. And what was the evidence that he was here in 2013? I believe that there was a lease signed in 2014, testimony from a girlfriend who had, who I believe was interviewed and said she had met him sometime around August 2016, and then testimony of some of the drug co-conspirators that he had been in the country and working with them for a period. Sometime, the record isn't unclear at the exact date he came in, but sometime in 2013, 2014. And that he stayed here. And that he stayed here. He was here throughout that time. And what agent testified to that? I don't remember the agent's name, Your Honor. I'm sorry. It's the first witness in the revocation hearing. I believe it's around Joint Appendix 55 or 56. And they saw him? They did not see him, no. This was based on evidence that they had collected during their investigation. He was found and arrested in June of 2017. Oh, yeah, that we know. Yes. That we know. But he had not, they did not come into personal contact with him before that time. But they had, they presented evidence to the court that he had been in the United States since at least December 2014 was the court's ultimate finding of facts. Is that Officer Walker? That is Officer Walker. Thank you, Your Honor. And he testified that he was here in 2014 because there was a transaction in California. That was his testimony, wasn't it? There were transactions, there were bank transactions that they were testing, but there was also, he had gotten a car lease at that point. He had been living with a girlfriend. There were other evidence that he was physically present in the court, not just bank transactions from his accounts. He had been using multiple alias at the time. I believe he even had a California driver's license at one point. Is your position that he was here, as you say, during those times that, and left, he was obligated to come back to do supervision? No, Your Honor. The position is that while he is in the United States and not reporting to the probation officers, then supervised release is told. But how do you have evidence that he's here the whole time? You're claiming 2011 through 2017, right? No, Your Honor. We are claiming between March of 2011 and his deportation in May of 2011. And then he returned at least in December of 2014 through June 2017. So the government is not arguing that he was within the United States and not reporting between May of 2011 and at least December of 2014. Okay, so there's no tolling that period. There's no tolling during that period. Okay, so just 14 through 17. And the three months that he was in the United States and not reporting in 2011. But you have no evidence, really, of 2014 that, well, we don't know because you said there was a lease. Was his name on the lease? It was a car lease that he, I believe, had a friend get for him and sign under his name. And then I think, but then I think it was assigned over to him. I'm not convinced. I'm not sure on the exact name on the lease. But the officer's investigation turned up evidence that he had been using this car, that he had a driver's license, that he had been in contact with people that they were communicating with in the course of the investigation. So we know at least. These people had affidavits, I'm sure, to back this up. I believe so, Your Honor. I'm not sure that they're in the revocation hearing. I believe it's just the officer's testimony about the investigation that he conducted. If we look specifically to Buchanan, I think that addresses the question raised by opposing counsel about when tolling starts, whether or not a mental state is required. The public defender's argument in this case would turn fugitive tolling into not fugitive status from supervised release, but from fugitive status from a warrant for a violation of supervised release. And that's not what Buchanan held. Buchanan made very clear that it's the defendant removing himself from the custody of supervised release that begins the tolling process. So it's not the government's not arguing that the reentry in violation of the supervised release terms, that's not what triggered the fugitive status. It's the part where you don't report when you're supposed to. It's the part where he's out of supervised release. So when he's not reporting, when he's under the obligation to report, he's essentially out of the legal custody of supervised release. The public defender's concern is that there needs to be a distinction between violating a term of supervised release and being a fugitive. It can't be that if one of the terms of supervised release is you don't use drugs and you show up to meet with your P.O., but you have been using drugs, that you are now a fugitive. So how exactly would you have us write the standard so we don't get into that problem? Yes, Your Honor. There's the this case standard, the way to write this case, and then there's a way to write a slightly step back, broader perspective. The way to do this case is the facts are so one-sided about him being out of custody, actively and consciously concealing himself, that at minimum this conduct means that he is a fugitive from justice. The step backwards, if you look to the cases cited in Buchanan, particularly Anderson and Zebst from the Supreme Court, the Supreme Court is talking about fugitive tolling as being outside of the legal or physical custody of the officer or the government. So in prison, it's escape from prison. On probation, it's being out of contact with your probation officer. So I think there is this concept of custody that's at the core of either being in prison or being on supervised release. Here, Mr. Thompson defeated the very point of supervised release, which is supervision. And so at least in those circumstances, he's out of the custody of his probation officer. And I think in similar situations where an individual is essentially out of the legal custody of the probation officer, that's when fugitive tolling would apply. But in this case, it's different. The very core of these provisions here wasn't supervision. It was just the opposite. We don't want to supervise you. We want you to stay out of the United States. So this is different, isn't it? Most cases are like what you said. We want to know what you're doing, and that's why you're supervised. Here was the opposite. We don't want to see you ever. Yes, I would say the important corollary to that is if you are here, we want to know you're here so that we can put you back on a plane out of here. And the idea of a defendant being able to come back into the country. Isn't that accomplished if you come and leave in less than 72 hours? I would say the purpose of supervised release is sort of materially upheld at that point. The defendant stays outside of the country. I think the idea being that when the defendant returns to the United States with no intent to leave, he has to check in with his probation officer. And the fact that he didn't is the reason he didn't know about the warrant pending for his previous violations. To go to Judge Harris's question earlier, if we take out the first reentry and the petition, no one would have known that Mr. Thompson was in the country until he was arrested in June 2017. And at that point, he would have successfully evaded the entire period of supervised release. At that point, it fundamentally undermines the congressional purposes of supervised release to say that a defendant can simply run out the clock by successfully evading law enforcement for a long enough period of time. Can I ask you a question again about kind of the back end of the tolling in this case, which I understand isn't being challenged? But the so the revocation proceeding here is January 2018, but the defendant is apprehended in June 2017. So how does fugitive tolling continue to apply between June 2017 and January 2018? I don't think it does, Your Honor. So the district court was wrong about that? Yes, Your Honor. Buchanan specifically talks about the defendant coming back into the control. Does it matter? Is there enough time now to get you from June 2017 to January 2018? Yes, I believe that's why the district court picks December to make the finding about at least December 2014, because that was the requisite period of time. Okay. Tell me how the math works. Is it because it's six months of tolling from December 2014 until it would have expired anyway? Yes, Your Honor. But then you have the extra three months from the, that's what I was going to say. Yes, Your Honor. And so we're at about, that's about nine months total of tolling. And so that got them at least to the date of the revocation. Okay. But we should probably try to be clear that the fugitive tolling does not last until the revocation proceeding. It only lasts until you're taken into custody. Yes, the reestablishment of control, right. I believe Buchanan uses the phrase back under supervision. Okay. And so I say that's why I think the custody component is sort of the core of the fugitive tolling doctrine, because that's the benchmark that Buchanan uses to start and then Buchanan uses to end. On that note, I'll just add that in footnote seven of Buchanan, the court specifically contemplates the idea that the fugitive tolling doctrine kicks in before any petition is filed or before any arrest warrant is issued. So it goes to the time the defendant is out of the supervision, as opposed to when the government acts on his failure to report. Unless the court has further questions on fugitive tolling, I'll offer just a brief summary of points on 3583, that even in the event the court believes that fugitive tolling wasn't applicable here, it was reasonably necessary the period of time between June 2017 when he was rearrested, or actually between the end of June 2015 and the adjudication, because it was the defendant's own willful acts that prevented the adjudication from happening during the time of supervised release. And although the public defender argues that essentially fugitive status controls both, the inquiry under 3583 is actually just one of practicality, and because the defendant was either outside of the country, which he concedes makes it impractical to adjudicate the violation, and then once he was back inside the country, he was actively hiding from law enforcement, the six months that it takes from arrest to the final entry of the revocation order is a reasonable period to adjudicate. And that would only apply to the 2011 petition, right? Correct, because a warrant, a petition has to be filed in a warrant issued before the end of supervised release. But nobody is contesting that the conduct relevant to the 2016 addendum could still be considered at that sentencing? Correct, Your Honor. Okay. Unless the court has any further questions, we'll rest on our briefs. Thank you. Mr. Grinnell, you have some time. Thank you. Just a couple of brief points, Your Honor. First, even the government, even under their standard that what matters is whether or not the person is being supervised or is out of custody, there still has to be a finding by the district court about when the fugitive status started, because that's what's relevant for all of these dates. And if I misspoke in response to Judge Harris's question earlier, then I apologize. Now I'm not sure if I did or not. But in this case, those dates didn't matter because of the judge's finding about when he was back. But there could very well be cases where it really does matter exactly when the fugitive status started. And so there has to be a finding of something that triggers it. And we submit that it's better if the standard is charges pending and a defendant's volitional acts to evade those charges because that's a clear, workable standard that's going to be understandable by defendants and by probation officers and by district courts when they calculate these periods. And just very quickly, a point about 3583I and the delayed revocation post-expiration. We submit that even though the standard in the statute is, quote, unquote, reasonably necessary, it was not reasonably necessary here because the 2011 petition was not filed until after Mr. Thompson had been deported. And so with no reason given, it's entirely possible that on some records with some facts, a probation officer may well be able to explain the reasons for a 39-day delay in filing a petition. Our position is that a delay for no reason cannot be reasonably necessary, and there's nothing in the record here that would indicate any reason for that delay because the probation officer was notified immediately that Mr. Thompson was back in the country and had been arrested in California, and there was nothing preventing that officer from, at a minimum, saying hold on to him, put a detainer on him, don't deport him until we adjudicate this violation in Virginia. So for that reason, it wasn't reasonably necessary to delay for over six years until well after expiration to adjudicate that. And even if the statute just says reasonably necessary, also Rule 32.1 says that the hearing has to be held within a reasonable time. And then the final point that I would make is I would ask the court to consider the scenario where a person commits an act that the probation officer suggests is a violation, and there's charges filed, and under the government's theory, the person becomes a fugitive. But then when we eventually hold a revocation hearing on that, the person is acquitted. They didn't do it. They're completely not guilty of the violation. Well, then we're completely up in the air about, well, was the person somehow retroactively not a fugitive during that period if, in fact, they weren't actually guilty of the violation? And if so, then if there wasn't tolling because the person wasn't a fugitive, we have no idea when the period ended and if there's even jurisdiction to have a post-revocation period revocation hearing. And so the judge would be in a position of having to find whether the person's guilty or not in order to determine whether or not there's even jurisdiction over the violation. So that's why we've argued that the government's theory throws this thing completely into chaos, and our theory is the more workable standard that's consistent with other fugitive tolling doctrines. I mean, the government's theory is the one that the courts have been using for a long time. I mean, has there been chaos as a result? Well, I would push back a little that I don't think there are a lot of cases, published decisions that have dealt with fugitive tolling that have been challenged and have really raised the issue. But there's some circuit case law on this, and they all use a standard roughly like this, and none of them uses the standard you're proposing. Yours is narrower than what any other circuit uses. That's fair enough, but it's also – it's consistent with the statute and it's consistent with others. Is there any evidence that there has been – this is a genuine question. I have the kinds of practical problems you're worried about arisen in these circuits. I'm not aware of it, but when we're talking about jurisdiction, it doesn't take a lot of examples. When we're talking about sending someone to prison here for 30 months for something that there may not be jurisdiction over, that's something that we don't need a lot of anecdotal data to say that that's a problem. If there are no other questions, we'd ask the Court to vacate Mr. Thompson's sentence. Thank you, counsel. We'll come down to Greek Counsel and proceed to our final case of the day.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris